Hebbbbt, J.
Apart from the obvious importance of this case to Feighan and Stokes, it has two noteworthy aspects, first, *266 the emergency need of an immediate decision and, second, the confusion engendered by the actions of the board and its staff in conducting the recount and their activities subsequent thereto, concluding on the 17th day of June. As a third aspect to be noted, it might also be. argued that the relator had other remedies available rather .than the remedy of mandamus procedure. Whether an injunction or a declaratory judgment might have been sought by the relator is now beside the point. This court recently hold in the case of State, ex rel. Wesselman, v. Board of Elections, 170 Ohio St., 30, 162 N. E. (2d), 118, paragraph two of the syllabus, as follows:
“A Court of Appeals that allows a writ of mandamus to a relator does not thereby abuse its discretion merely because such relator also has an adequate remedy in the ordinary course of the law.”
The issue raised here, as fixed by the petition and the demurrer, finally revolves solely around the question of Stokes’ right to an additional recount of precincts not previously recounted. Stokes filed his original application for recount under the authority of Sections 3515.01, 3515.02 and 3515.03 of the Revised Code, and such recount was had and completed June 14 under the provisions of Sections 3515.04 and 3515.05, Revised Code. Section 3515.06, Revised Code, so far as applicable here, provides as follows:
“If a person was declared nominated as a candidate for election to an office or elected to an office or position in an election and if it subsequently appears by the amended declaration of the results of such election made following a recount of votes cast in such election that such person was not so nominated or elected, such person may, within five days after the date of such amended declaration of the results of such election, file an application with the board of elections for a recount of the votes cast at such election for such nomination or election in any precinct, the ballots of which have not been recounted.
U • # #
“Sections 3515.01 to 3515.05, inclusive, of the Revised Code are applicable to any application provided for in this section and to the recount had pursuant thereto.” (Emphasis supplied.)
Following certification of the first amended abstract on *267 June 14, Feighan addressed his communication to the board of elections as set forth in his petition.
Section 3513.03, Bevised Code, provides:
“The board of elections shall have all the powers and perform all the duties in connection with primary elections which are imposed by the provisions of Title XXXV of the Bevised Code governing general elections. * * *”
Section 3505.32, Bevised Code, provides in part:
“If a person for whom votes were cast in a polling place at such election, or a member of the board, files with the board a written statement alleging that the board is unable to determine the correct result of the voting at such polling place at such election without opening the sealed container containing the ballots which were counted in such polling place at such election, and requesting that the board open such sealed container and count such ballots, the board, upon the order of a majority of its members, shall open such container and count such ballots in the presence of all of the members of the board and any other persons who are entitled to witness the official canvass.” Note that the Legislature used the word, “count,” and not the word, “recount.”
It is assumed that the action of the board on June 17 in opening the containers of the ballots in the eight specified precincts and counting such ballots was done pursuant to the above provision. It is not apparent from the pleadings whether the change of result which occurred in the three-day period between June 14 (when the board certified its corrected abstract declaring Stokes to be the winner of the 17th nomination by 19 votes) and June 17 (when it again certified a corrected abstract showing Feighan to be the winner by eight votes) was caused in the three precincts where corrections were made or in the eight precincts where the containers were opened and the ballots “counted,” or both. Nevertheless, it is admitted (by the petition and demurrer) that the board, when it made its second certification of correction of the abstract, was acting under the provision of Section 3513.22, Bevised Code, providing, “If-, after certifying and sending abstracts and parts thereof, a board finds that any such abstract or a part thereof is incorrect, it shall promptly prepare, certify, and send a corrected abstract or part thereof to take the place of each incorrect abstract or part thereof theretofore certified and sent.”
*268 That section further provides:
“Election officials, who are required to declare the results of primary elections, shall issue to each person declared nominated for * * * an office, an appropriate certificate of nomination * * *. Certificates of nomination or election issued by boards to candidates * * * shall not be issued before the expiration of the time within which applications for recounts of votes may be filed or before recounts of votes, which have been applied for, are completed.”
Here the board admittedly is not seeking to exercise its discretionary power further to ascertain and correct mistakes in the abstracts of any of the precincts where the ballots have already been recounted; admittedly all that it seeks to do further is to recount the additional 150 precincts which Stokes has sought in his application of June 22 to have recounted.
On the set of facts peculiar to this case, therefore, we have only the question left to determine as to whether Section 3515.06, Revised Code, may be invoked by Stokes following the amended abstract and declaration of results dated June 17, declaring Feighan as the 17th nominee.
Section 3515.05, Revised Code, provides, so far as applicable here, as follows:
“Upon completion of the recount of the ballots of all precincts listed in an application for a recount * * # the board of elections shall promptly prepare and certify an amended abstract showing the votes cast in each precinct in its county in which the nomination * * * was submitted to electors, which amended abstract shall embody the votes of the precincts, the ballots of which were recounted, as shown by such recount. * # *
“If the nomination * * * concerning which such recount was made was submitted only to electors within a county, the board shall make an amended declaration of the result of such election in the same manner required in the making of its original declaration of the result of such election.”
All these sections, 3515.01 through 3515.07, must be read together in order to determine the legislative intent as to recounts. As we read Section 3515.06, Revised Code, Feighan certainly had a right to make application within five days after June 14 for a recount of any or all previously unrecounted precincts, just as Stokes had the right until June 1, under Section 3515.01, Revised Code, to ask for a recount in any or all of the precincts *269 in Cuyahoga County. We recognize, of course, the financial difficulty in the way of a complete recount application but nevertheless the right was there. Had Stokes asked for a recount of all the precincts there would have been no precincts left for Feighan to ask to have recounted. . The procedure by the board on June 17 was not, however, a recount within the statutory meaning. The board on that day assumedly acted within its discretionary power and its actions were not challenged by either candidate, so that issue is not before us. Suffice it to say that the board acted under its power as set forth in Section 3513.22, Revised Code (as quoted above), when it certified and sent a corrected abstract as of June 17, 1960. The amended declaration of results made June 14 showing Stokes the winner of the 17th nomination was “made following a recount of votes cast in such election, ’ ’ thereby making the provisions of Section 3515.06, Revised Code, available to Feighan for five days thereafter. Had Feighan sought a recount of additional precincts following the amended certification of June 14 with another subsequent change back to Feighan as the 17th nominee following such recount then the question of the availability to Stokes of Section 3515.06, Revised Code, to make a further application for recount of previously unrecounted precincts might be raised, but we do not have that situation here and accordingly express no opinion.
In the view of the majority of this court, the amended certification and declaration of results as of June 17 was not, however, “made following a recount of votes cast in such election.”
It follows that the board did not have authority to accept Stokes’ second application for recount and the check deposited therewith. Had the board raised the issue of its discretionary power to further consider its own tabulations even to the point of opening envelopes containing ballots in precincts where it was concerned with its declared results (Section 3505.32, supra), this court would gravely question the power of a court to grant a writ of mandamus to require a certificate of nomination, but that question is not raised by the members of the board here. The controlling question raised by the pleadings relates solely to whether the board has the power to accept the application of Stokes for a recount of an additional 150 precincts and to make such a recount accordingly. We are of the opinion that the board is without that power under the circumstances of this *270 case, and, therefore, we must affirm the judgment of the Court of Appeals.

Judgment affirmed.

Taft, Matthias and Bell, JJ., concur.
Weygandt, C. J., Zimmerman and Peck, JJ., dissent.